UNION PLANTERS BANK,
N.A., Appellant,

v.

Donna B. HUTSON and Joan
Barton, Appellees.

No. 2004–CA–002160–MR.

Court of Appeals of Kentucky.

June 9, 2006.

Rehearing Denied Dec. 4, 2006.

Karen J. Greenwell, James T. Hodge, Mickey T. Webster, Wyatt, Tarrant & Combs, LLP, Lexington, KY, Shane A. Romines, Copeland & Romines Law Office PLLC, Corbin, KY, for appellant.

1.  Senior Judge John W. Potter sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2.  Many states have similar statutes. 56 A.L.R. 335 (1927).

Darrell L. Saunders, PSC, Corbin, KY, for appellee.

Before GUIDUGLI and HENRY, Judges; POTTER, Senior Judge.[1]

*OPINION*

POTTER, Senior Judge.

Union Planters Bank failed to timely release a mortgage on property owned by Donna B. Hutson and her mother, Joan Barton. They sued Union Planters under KRS 382.365, which imposes penalties upon a mortgage holder who fails to timely release the mortgage after the underlying note is satisfied. Union Planters appeals from a $98,000 adverse judgment.

KRS 382.365, which was first enacted in 1978,[2] took on new life in 2000 when the penalties were dramatically increased. The previous $500 ceiling on discretionary penalties became a mandatory daily penalty.[3] The Legislature undoubtedly responded to a growing problem of mortgages not being timely released. This problem is the natural result of several relatively recent changes in the lending industry. The frequency of mortgage transactions has increased dramatically as our society has become more mobile and as mortgage refinancing has become big business. In addition, the mortgages themselves as well as the companies that hold them are more likely to be bought and sold than ever before. A mortgage is frequently held by an entity quite remote from the original transaction.

3.  2000 Ky. Acts, Ch. 412, § 1. [KRS 382.365 has been amended by the enactment of SB 45, effective July 12, 2006, which places a cap on the amount of damages recoverable and requires that notice to the lienholder of failure to release be accomplished by certified mail.]

Sections 1 and 2 of KRS 382.365 require that a lien holder release a lien within 30 days after it is satisfied, and if this deadline is not met, provide for expedited court proceedings in which the owner may obtain a release and recover his attorney's fees and costs.[4]

Sections 3 and 4 provide for an additional recovery under certain circumstances. Essentially, if the landowner gives the lien holder written notice that the lien has not been released and the lien holder does not thereafter release the lien, the lienholder becomes liable for a daily sum. Fifteen days after "the lien holder receive[s] notice" an amount of $100 per day is imposed, and thirty days later this sum increases to $500 per day.[5]

After a trial by deposition the trial court found Union Planters had not released the Hutson/Barton mortgage lien until 234 days after notice that the mortgage had been satisfied. It awarded Hutson and Barton, $98,000 plus attorney's fees and costs.

Union Planters contends that the penalties provided for in KRS 382.365, apply only if it actually received the notice and the court did not so find, and if it did, there was insufficient evidence to support such a finding. It further claims that Hutson's and Barton's actions are barred by the doctrine of laches. Finally, it alleges that the KRS 382.365 is unconstitutional under both the Federal and State Constitutions. Union Planters gave notice of the constitutional challenge to the Attorney General, who declined to intervene.

Certain facts are not in dispute. On December 5, 2000, Hutson, Barton and their respective husbands executed a mortgage in favor of Union Planters to secure a $327,000 loan. Less than a year later, on August 28, 2001, they refinanced the loan and in the process paid off the loan to Union Planters. For some reason the mortgage was not released. Two years later, on September 3, 2003, Hutson's daughter, who worked for their closing attorney, mailed a letter by regular mail to Union Planters notifying it that the mortgage had not been released. There was no further attempt to communicate with Union Planters until April 14, 2004, when this action was filed. On April 28, 2004, the

**4.** (1) A holder of a lien on real property, including a lien provided for in KRS 376.010, shall release the lien in the county clerk's office where the lien is recorded within thirty (30) days from the date of satisfaction.

(2) A proceeding may be filed by any owner of real property or any party acquiring an interest in the real property in District Court or Circuit Court against a lienholder that violates subsection (1) of this section. A proceeding filed under this section shall be given precedence over other matters pending before the court.

**5.** (3) Upon proof to the court of the lien being satisfied, the court shall enter a judgment releasing the lien. The judgment shall be with costs including a reasonable attorney's fee. If the court finds that the lienholder received written notice of its failure to release and lacked good cause for not releasing the lien, the lienholder shall be liable to the owner of the real property in the amount of one hundred ($100) per day for each day, beginning on the fifteenth day after receipt of the written notice, of the violation for which good cause did not exist.

(4) A lienholder that continues to fail to release a satisfied real estate lien, without good cause, within forty-five (45) days from the date of written notice shall be liable to the owner of the real property for an additional fur hundred dollars ($400) per day for each day for which good cause did not exist after the forty-fifth day form the date of written notice, for a total of five hundred dollars ($500)per day for each day for which good cause did not exist after the forty-fifth day form the date of written notice. The lien holder shall also be liable for any actual expense including a reasonable attorney's fee incurred by the owner in securing the release of real property by such violation.

day the Secretary of State made his return on Union Planters, it released the mortgage.

Hutson, who was herself a mortgage broker, and Barton suffered no damages, actual or threatened, due to Union Planter's delay in releasing the mortgage. Hutson's daughter was aware of the penalty for not releasing a lien and would "normally" follow up on notice letters if the mortgage was not promptly released. She did not follow this practice with her mother's mortgage.

■ One issue argued on appeal is whether receipt of the notice can be presumed from its mailing or must there be a finding that Union Planters actually received the notice.

■ Unlike those cases where mailing a communication is an effective means of giving notice, KRS 382.365 expressly requires that the notice must be received before a penalty may be imposed. It is an element of the cause of action and is the date from which the penalties are calculated.[6] However, that does not dispose of the issue here. The real dispute is whether the fact finder, in this case the trial court, made such a finding. In relevant part, the court below stated:

> 3. [Union Planters] is deemed to have received written notice of its failure to release pursuant to the "mailbox rule." The Plaintiffs introduced testimony that the letter was placed in an envelope properly addressed to [the Bank], proper postage was affixed and the letter was placed in the United States mail. In *Haven Point Enterprises v. United Kentucky Bank, Inc.,* Ky., 690 S.W.2d 393 (1985) the court states as follows:

There is always a presumption that a communication that was properly stamped, addressed and deposited in the mail was received by the addressee. See *Commonwealth Life Ins. Co. v. Gault's Admr.,* 256 Ky. 625, 76 S.W.2d 618 (1934). Once the fact of address, stamp and deposit is proven, the burden shifts to the addressee to prove that he had never received the letter.

The presumption of notice from a properly mailed letter is covered by KRE 301 and has the same effect it had in the pre-Rules law, *Lawson, Kentucky Law of Evidence,* 4th Edition, Section 10.10[6] page 807.

4. Where the basic facts of a presumption have been established and the opponent presents no rebuttal evidence, the presumed fact stands as a matter of law. *Roberts v. Roberts,* Ky.App., 67 S.W.3d 605 (2001).

It might be a little unclear whether the trial court found as a fact that the Bank received the letter or just found that it was mailed and believed that, together with the mailbox rule, this finding was sufficient. There was evidence on both sides of whether the bank got the letter. Hutson's daughter testified that the letter was mailed, and the Bank submitted an affidavit that the letter was not received. In addition, the Bank's failure to release was circumstantial evidence that it did not receive the letter. With or without a presumption, with the evidence in this state the trial court was free to find either way and its findings will not be disturbed. CR 52.01. However, even if it is assumed that the court did not actually find that the Bank got the letter, but instead only found that it was mailed, its findings are suffi-

---

**6.** "If the court finds that the lienholder received written notice of its failure ..." KRS 382.365(3).

cient as there was no motion for additional findings. CR 52.04.

■ Union Planters argues that the statute and the result reached are unconstitutional under the Due Process Clause of the 14th Amendment to the United State Constitution and Sections 2, 59(4) and 59(22) of the Kentucky Constitution.

Our statutes are replete with examples of civil penalties imposed for various violations and some are admittedly more severe than those imposed on lien holders who fail to release a lien. *See* e.g., KRS 77.990; KRS 174.990; KRS 338.991; and KRS 367.990.

■ However, while the Legislature has the power to set such penalties to protect the public interest, the Due Process Clause of the United States Constitution and Kentucky Constitution, Section 2, requires that the penalty not be so severe and oppressive to be wholly disproportionate to the offense and obviously unreasonable. *St. Louis I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 40 S.Ct. 71, 64 L.Ed. 139 (1919). Any exercise of the police power must be exercised reasonably within the legitimate interest of the public. *Boyle County Stockyards Co. v. Commonwealth, Dept. of Agriculture*, 570 S.W.2d 650, 653 (Ky.App.1978).

As noted, in 2000 the Legislature increased the penalties substantially and made them mandatory. As Union Planters points out, if the statute is interpreted literally after a bank loses or overlooks a notice letter, a potential plaintiff could simply wait until the close of the five year statute of limitations period[7] and collect over $900,000. This result prevails irrespective of the amount of the original loan or whether the owner suffered any actual damages. Therefore, interpreted as Hut-

son and Barton suggest the penalty is wholly disproportionate to the offense and obviously unreasonable and the statute would be unconstitutional under the 14th Amendment to the United States Constitution and under Section 2 of the Kentucky Constitution.

However, the bank asserts it may argue the defense of laches. It raised basically the same concept below by asserting Hutson and Barton had a duty to mitigate damages. Regardless of the rubric, the concept involved implies that the landowner has a duty to act reasonably and in good faith. For example, the landowner might have an obligation to follow up on the letter, as Hutson's daughter normally did, if the lien is not released in a reasonable time. That is undoubtedly what would happen if there were no statute or the landowner were experiencing real damages. Certainly no less should be required where the statute has, in effect, specified liquidated damages.

■ Hutson's and Barton's rights flowed from a contractual relationship with the Bank. The Courts have not hesitated to place a duty of good faith on both parties to a contract. "In every contract, there is an implied covenant of good faith and fair dealing." *Ranier v. Mt. Sterling Nat'l Bk.*, 812 S.W.2d 154, 156 (Ky.1991); *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368 (Ky.2000) (Insurance contracts).

A recent Supreme Court case is particularly illustrative. In *Harrison v. Valentini*, 184 S.W.3d 521 (Ky.2005) the Court adopted a "continuous course of treatment doctrine" under which the statute of limitations is tolled in medical malpractice cases as long as the patient is under the physician's care. However, the Court imposed a requirement that to be effective

---

7. KRS 413.120

the continuing treatment be sought in good faith. The statute is not tolled if the patient returns for additional treatment in an attempt to extend the limitations period.

Placing a duty to act in good faith on the landowner has several advantages. First and foremost, it saves the statute from being unconstitutional. Second, the parties are pushed to act in a manner consistent with that envisioned by the Legislature when it increased the penalty. Undoubtedly, the Legislature sought to protect the land owner from a mortgage holder, having gotten its money back, callously ignoring the plea of its former debtor to have his property returned. It probably did not envision a land owner who is suffering no damage sleeping on his rights solely to balloon the penalty. And lastly, allowing the landowner to sleep on his rights actually undercuts one objective the legislature sought to promote, accurate public real estate records. By discouraging the landowner from notifying the lien holder a second time, the statute actually postpones the day when the records are to be corrected.

■ KRS 382.365 does not apply to all mortgages on real property but specifically excludes mortgages securing lines of credit or revolving credit plans, a distinction Union Planters contends is unconstitutional under Kentucky Constitution, Section 59.

The primary purpose of Kentucky Constitution, Section 59 is to prevent special privileges, favoritism, and discrimination, and to insure equality under the law. "A special law is legislation which arbitrarily or beyond reasonable justification discriminates against some persons or objects and favors others." *Kentucky Harlan Coal Co. v. Holmes*, 872 S.W.2d 446, 452 (Ky.1994) (citation omitted).

The exclusion of line of credit and revolving credit plan mortgages from the purview of the statute is both natural and reasonable. By the terms of those mortgages, although the balance of the loan may be zero, the loan contract remains in effect giving the mortgagor ready access to future borrowing. If the lien were released when a zero loan balance was reached, the mortgagor would have to again go through the entire loan process to obtain additional funds, thus essentially negating the purpose of such loans. The statute does not violate Section 59 of the Kentucky Constitution.

Therefore, the judgment below is set aside and the case remanded for a new trial as to damages only, with Hutson and Barton receiving such amounts as accrued under the statute while they were acting in a reasonable manner and in good faith.

ALL CONCUR.