RENDERED: APRIL 23, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0666-MR

CAPITAL ONE BANK (USA), N.A.                    APPELLANT

v.
APPEAL FROM TRIGG CIRCUIT COURT
HONORABLE C.A. WOODALL III, JUDGE
ACTION NO. 19-CI-00085

DONALD RAY MCWATERS AND
CYNTHIA A. MCWATERS                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, MCNEILL, AND L. THOMPSON, JUDGES.

ACREE, JUDGE: Capital One Bank (USA), N.A. ("Capital One"), appeals the

summary judgment entered in favor of Donald and Cynthia McWaters (collectively

"Appellees"), awarding them $139,500.00 in statutory penalties for Capital One's

failure to release a judgment lien. KRS[1] 382.365. After careful consideration, we

affirm.

---

[1] Kentucky Revised Statutes.

## BACKGROUND

In 2006, Capital One obtained a judgment against Frederick Earl McWaters ("Freddie"),[2] for indebtedness owed on his credit card account. Capital One filed a Notice of Judgment Lien on Real Estate in the Trigg District Court, encumbering all real estate in which Freddie had an ownership interest.

On August 3, 2018, Freddie contracted to sell his one-half (1/2) interest in a parcel of land located in Trigg County to the Appellees, who owned the other one-half (1/2) interest. Local attorney Vance Cook handled closing.[3] Prior to closing, Cook conducted a title search and discovered the judgment lien encumbering the property. He contacted Capital One to obtain a payoff. On July 24, 2018, Cook received a payoff letter from "Capital One Services, LLC"[4] stating the payoff amount was $1,648.57. (T.R. at 7).

Cook deducted the payoff amount from Freddie's sale proceeds and held it in escrow. At closing, he sent a letter, accompanied with a check in the

---

[2] Freddie and Donald McWaters are brothers.

[3] The transaction was financed by Farm-Credit Mid-America ("FCMA"). Cook testified in deposition that he represented both the Appellees and FCMA.

[4] According to the affidavit of Jenna Guerriero, a Litigation Specialist for Capital One Services, Capital One Services provides, among other things, accounting, account and database management, human resources, and other operational and managerial services to Capital One. (Trial Record ("T.R.") at 321).

amount of $1,648.57, by certified mail to the address provided in the payoff letter.

The letter, dated August 3, 2018, stated:

> Enclosed please find a check in the amount of $1,648.57 to satisfy the payoff for the above referenced account.[5] Please file the Release for the Notice of Judgment Lien on Real Estate with the Trigg County Clerk in Cadiz, Kentucky. A copy of the Notice of Judgment Lien on Real Estate and the payoff letter are attached. I request that a copy of the Release be mailed to my office.

(T.R. at 8). It is uncontested that Capital One received the check on August 6, 2018.

A month lapsed, and the lien had not been released. On September 4, 2018, Cook contacted Capital One by telephone to inquire why the lien had not been released. Cook was informed by a Capital One employee that the check had been erroneously applied to a second, open credit card account held by Freddie, which had a balance of $457.29. Capital One allowed Freddie a credit balance on that account for the overpayment by approximately $1,200. (T.R. at 323). Capital One initiated a payment investigation and, according to Cook, Capital One informed him the funds would be transferred to satisfy the lien account. (T.R. at 45).

---

[5] It is undisputed that the account number referenced in the letter was correct. Additionally, the check was noted "Lien Pay-off."

On September 13, 2018, Cook drafted a letter to "Capital One Services, LLC," with which he had been corresponding, threatening to initiate legal proceedings pursuant to KRS 382.365, if the lien was not released. The letter was mailed to "Corporation Service Company," the registered agent of Capital One Services, located in Richmond, Virginia.[6] It stated:

> I represent Freddie McWaters. Payment in the amount of $1,648.57 in satisfaction of the above referenced Judgment Lien was delivered to Capital One on or around August 5, 2018. Capital One misapplied the proceeds. It is my understanding the payment was applied to the proper account on September 4, 2018. We have requested Capital One file the Release for the Notice of Judgment Lien with the Trigg County Clerk's office in Cadiz, Kentucky. The Release has not been received.
>
> **KRS 382.365 Provides that any lien on real property shall be released from the County Clerk's Office within thirty (30) days after the date of satisfaction.** The statute provides further that if the lien holder fails to release a satisfied real estate lien without good cause within forty-five (45) days from the date of written notice [it] shall be liable to the owner of the property for an additional four hundred ($400) per day for each day that good cause did not exist after the forty-fifth (45th) day from the date of written notice. . . .

(T.R. at 13). Capital One appears not to have responded to the letter.

On October 4, 2018, Freddie contacted Capital One, inquiring about the $1,648.57 payment that had been applied to his second, open credit card

---

[6] Corporation Service Company is the registered agent for both Capital One and Capital One Services.

account.  (T.R. at 324).  On October 17, Capital One issued a refund check in the amount of $1,191.14, the remaining balance of the payoff check.  Freddie cashed the check.  (T.R. at 399).

Cook again contacted Capital One and was told that Freddie would need to resubmit the payoff amount in order for the lien to be released.  On October 26, 2018, Cook drafted another letter.  This one, however, was addressed to "Capital One Bank" and was again mailed to Corporation Service Company, the registered agent for Capital One.  In substance, it stated what he had said in his September 13, 2018 letter.  Cook did not hear back from Capital One, and the lien was never released.

Approximately six months after Cook's last correspondence,[7] on April 25, 2019, the Appellees, represented by different counsel, filed this current action against Capital One.  Appellees sought release of the judgment lien and an award of statutory penalties pursuant to KRS 382.365.  According to Capital One, it did not learn of the lawsuit until May 31, 2019, when its registered agent received discovery requests.  By this time, however, Appellees had filed a motion for summary judgment.  Capital One responded by filing a release of judgment lien on

---

[7] Cook claims that around the time of his second letter, his brother passed away, and he was responsible for winding up all the assets of his estate.  Because of this, he did not immediately initiate proceedings.  He further stated he informed the Appellees he had little experience in this field and referred them to their current counsel.

July 3, 2019, a motion to dismiss the complaint for improper service, and a motion to continue the summary judgment hearing.

At a hearing on the issues, counsel for Capital One agreed to accept service on behalf of his client, and the circuit court allowed additional time to file a response to the complaint. In addition, the Appellees accurately argued that the lien release was ineffective.[8] Capital One filed its answer to the complaint on July 30, 2019 and filed a proper release on August 2, 2019.

Capital One asked to schedule depositions for Cook and Freddie. Regarding Freddie, Appellees filed a motion for a protective order, asserting Freddie did not possess relevant information as to whether Capital One was liable under KRS 382.365. Capital One responded, arguing that Freddie had knowledge regarding the refund issued to him by Capital One and any communications regarding the refund and resubmission of payment.

The circuit court granted the protective order. It reasoned that:

> Plaintiff [Appellants] stipulated on the record: (1) the Defendant had received a check from Hon. Vance Cook as the closing attorney in the amount of $1,648.57 for the payoff of a judgment lien. (2) Defendant applied the full amount to a credit card that the seller, Freddie McWaters, had with Capital One and not the judgment lien account. (3) Defendant refunded the sum of $1,191.14 to Freddie McWaters since the balance of the credit card was only $457.43. (4) Freddie McWaters received these funds by

---

[8] In the order granting summary judgment, the circuit court ruled that the July 3 lien release was not effective. This is not an issue before this Court.

check and negotiated the check. (5) Plaintiff did not receive any of the refunded amount from Freddie McWaters.

Accordingly, the circuit court ruled that all relevant information sought by Capital One had been stipulated, and that Freddie would not be able to provide any further relevant information relating to damages under KRS 382.365.

Capital One responded to the Appellees' motion for summary judgment on August 30, 2019. It argued the Appellees failed to sufficiently establish the requirements for statutory penalties under KRS 382.365. In addition, it contended the doctrine of laches and good faith barred the Appellees' claim because they delayed filing suit for six months, allowing penalties to balloon.

The circuit court granted summary judgment for Appellees on February 3, 2020, awarding them $139,500.00 in penalties that accrued from October 2, 2018 until August 2, 2019, the date of the release. Costs and attorney's fees were awarded. (T.R. at 556, 584). This appeal followed.

## STANDARD OF REVIEW

Summary judgment review determines "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); CR[9] 56.03. "Because summary judgment

---

[9] Kentucky Rules of Civil Procedure.

involves only legal questions and the existence of any disputed material issues of

fact, an appellate court need not defer to the trial court's decision and will review

the issue *de novo.*" *Lewis v. B&R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001).

## ANALYSIS

KRS 382.365 provides, in pertinent part:

(1) A holder of a lien on real property . . . shall release the lien in the county clerk's office where the lien is recorded within thirty (30) days from the date of satisfaction.

. . .

(3) A proceeding may be filed by any owner of real property or any party acquiring an interest in the real property in District Court or Circuit Court against a lienholder that violates subsection (1) [] of this section. . . .

(4) Upon proof to the court of the lien being satisfied by payment in full to the final lienholder or final assignee, the court shall enter a judgment noting the identity of the final lienholder or final assignee and authorizing and directing the master commissioner of the court to execute and file with the county clerk the requisite release or assignments or both, as appropriate. The judgment shall be with costs including a reasonable attorney's fee. If the court finds that the lienholder received written notice of its failure to release and lacked good cause for not releasing the lien, the lienholder shall be liable to the owner of the real property or to a party with an interest in the real property in the amount of one hundred dollars ($100) per day for each day, beginning on the fifteenth day after receipt of the written notice, of the violation for which good cause

-8-

did not exist. This written notice shall be properly addressed and sent by certified mail or delivered in person to the final lienholder or final assignee as follows:

(a) For a corporation, to an officer at the lienholder's principal address or to an agent for process located in Kentucky; however, if the corporation is a foreign corporation and has not appointed an agent for process in Kentucky, then to the agent for process in the state of domicile of the corporation[.]

. . .

(5) A lienholder that continues to fail to release a satisfied real estate lien, without good cause, within forty-five (45) days from the date of written notice shall be liable to the owner of the real property or to a party with an interest in the real property for an additional four hundred dollars ($400) per day for each day for which good cause did not exist after the forty-fifth day from the date of written notice, for a total of five hundred dollars ($500) per day for each day for which good cause did not exist after the forty-fifth day from the date of written notice. The lienholder shall also be liable for any actual expense including a reasonable attorney's fee incurred by the owner or a party with an interest in the real property in securing the release of real property by such violation and in securing an award of damages. . . .

KRS 382.365 essentially conditions an award of statutory penalties on proof of three facts: (1) satisfaction of the underlying debt; (2) written notice to the lienholder of its failure to release the lien; and (3) lack of good cause for failing to

release the lien once notice is provided. *Hall v. Mortg. Elec. Registration Sys., Inc.*, 396 S.W.3d 301, 304 (Ky. 2012).

Capital One argues: (1) that the judgment lien was not satisfied; (2) Cook's letter did not satisfy the notice requirement; (3) it had good cause for not releasing the judgment lien; (4) genuine issues existed regarding the doctrines of laches and good faith; and (5) the circuit court abused its discretion by granting Appellees' motion for protective order. We address each argument in turn.

*Satisfaction*

The circuit court concluded the lien was satisfied on August 6, 2018, when Capital One received the payoff amount. We agree.

KRS 382.365(7) defines when a lien is satisfied. It states:

> For the purposes of this section, "date of satisfaction" means that date of *receipt* by a holder of a lien on real property of a sum of money in the form of a certified check, cashier's check, wired transferred funds, or other form of payment satisfactory to the lienholder that is sufficient to pay the principal, interest, and other costs owing on the obligation that is secured by the lien on the property.

KRS 382.365(7) (emphasis added). It is clear, from the face of the statute, that a lien is satisfied once the lienholder receives sufficient payment. It is uncontested that the payoff check was received by Capital One on August 6, 2018.

Capital One, however, asserts that a lien is not satisfied until payment is actually applied to the debt. And, because the $1,648.57 payoff check was

-10-

erroneously applied to Freddie's second credit card account, the lien account was never satisfied. We are not persuaded.

Capital One's reliance on *Jones v. PBK Bank* is misplaced. No. 2006-CA-002449-MR, 2008 WL 2696232, (Ky. App. July 11, 2008). The plaintiff in *Jones* attempted to pay off a mortgage. However, the title company involved in that transaction requested a payoff amount for the wrong loan – a chattel loan. Due to the requesting title company's error, the lienholder applied the proceeds to the chattel loan instead of the mortgage. This Court held that the mortgage had not been satisfied.

The facts before us are distinguishable from *Jones*. Here, it is uncontested that on August 3, 2018, Cook sent, by certified mail, a check that was sufficient to satisfy the judgment lien. The letter referenced the proper account number, appended the payoff letter for reference, and sought a release of the judgment lien. Capital One's internal administrative error in applying the check does not avoid the statute's definition of the "date of satisfaction." If a lienholder's internal administrative error could avoid the statutory penalty, we no doubt would see more of them.

Because Capital One was properly instructed as to which account the check was intended to satisfy, the lien *was* satisfied on August 6, 2018, when Capital One received the payoff check.

-11-

*Written Notice*

The circuit court concluded the September 13, 2018 letter addressed to "Capital One Services, LLC" and sent to the shared registered agent of both Capital One and Capital One Services satisfied the notice requirement of KRS 382.365(4)(a). We find no error.

Capital One's argument before this Court is that the letter was addressed to "Capital One Services, LLC" and not "Capital One Bank (USA), N.A." – the final lienholder – and, therefore, it was not properly noticed in accordance with the statute. Given the facts of this case and the close relationship between Capital One and Capital One Services, we disagree.

First, we note Capital One admits it shares the same registered agent as Capital One Services – Corporation Service Company – which is located in the state of Virginia.[10] Capital One also acknowledges that Capital One Services provides a multitude of services on its behalf, including accounting, account and database management, human resources, and other operational and managerial services. (T.R. at 321). In fact, it was Capital One Services that communicated with Cook regarding the payoff amount for the judgment lien. (T.R. at 7). The

---

[10] It does not appear, and Capital One does not assert to this Court, that it has a registered agent in the state of Kentucky.

two entities are inextricably interrelated, with Capital One Services, in essence, acting as an agent of Capital One.

As succinctly stated by Justice Palmore, "When all else is said and done, common sense must not be a stranger in the house of the law." *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895, 900 (Ky. 1993) (quoting *Cantrell v. Kentucky Unemployment Ins. Comm'n*, 450 S.W.2d 235, 237 (Ky. 1970)). Common sense leads this Court to the determination that the September 13, 2018 letter, although addressed to "Capital One Services, LLC," sufficiently put Capital One on notice of its failure to release the judgment lien. Accordingly, we agree with the circuit court that the notice requirement was satisfied.[11]

### Good cause

Good cause is a question of law to be determined by the totality of the circumstances. *Hall v. Mortg. Elec. Registration Sys., Inc.*, 396 S.W.3d 301, 305 (Ky. 2012).

Capital One argues that it had good cause for not releasing the judgment lien because a legitimate controversy existed as to whether the underlying debt had been satisfied. Specifically, it admits to inadvertently applying the payoff check to the wrong account, but contends it refunded part of

---

[11] This Court notes that Cook sent a nearly identical letter, dated October 26, 2018, properly addressed to "Capital One Bank." This letter also satisfied the notice requirement.

-13-

the check, leaving the lien unpaid. Accordingly, it asserts, its "human error –

applying part of [Freddie's] payment to satisfy his open account and refunding the

rest of the payment to [Freddie] – 'created a good faith dispute which provided the

requisite 'good cause.'" Capital One relies on *Hall*, 396 S.W.3d 301, and *Wolter v.*

*U.S. Bancorp*, No. 2003-CA-2788-MR, 2004 WL 2984882, at *2 (Ky. App. Dec.

23, 2004), in which human error was determined to amount to good cause for

failure to release a lien.

It is true that simple human error can create a good faith dispute,

preventing a claimant from recovering statutory damages. *Hall*, 396 S.W.3d at

306. However, not all human error amounts to good cause for refusing to release a

lien. *Id*. at 307-308. In *Hall*, the debtors satisfied their mortgage in full. The

lienholder prepared and filed a release. However, due to a scrivener's error, the

release as ineffective. *Id.* at 302. The debtors, aware of the error, notified the

lienholder but did not inform them of the scrivener's error. The lienholder

promptly searched and confirmed that a release had been filed, even though it was

ineffective. *Id*. The Kentucky Supreme Court held that under these facts, the

ignorance of the scrivener's human error misled the lienholder into believing that it

released the lien, and this established "good cause" for failing to timely release the

mortgage. *Id* at 307-08.

-14-

In *Wolter*, the debtors satisfied their mortgage in full. However, a human calculation error on behalf of the lienholder misled it to believe that an outstanding balance remained. *Wolter*, 2004 WL 2984882, at *1. Accordingly, the bank refused to release the lien. This Court held that a legitimate controversy existed regarding whether the mortgage had been satisfied, providing the requisite "good cause." *Id.* at *3.

The facts in this case are distinguishable from *Hall* and *Wolter*. Here, Capital One was given a check, backed by sufficient funds sufficient to satisfy the debt in full, directed to the proper party, and identifying the proper account to which it was to be applied. Even after erroneously applying it to the wrong account, Capital One could have rectified its error by simply transferring the funds to the appropriate account, as it informed Cook it would do. Instead, Capital One appears to have sought an advantage in its error. It refunded Freddie $1,191.14 – the remaining balance after satisfying his second debt – and required him to remit the entire $1,648.57 before it would release the lien. That way, both accounts would have been satisfied.

What perhaps began as human error of a Capital One employee turned into a calculated attempt to collect on both the judgment lien and Freddie's second credit card account. Capital One's actions are clearly distinguishable from the human error cases and, if anything, cause the Court to look in the direction of bad

faith in failing to release the lien. We affirm the circuit court's conclusion that Capital One did not have good cause for not releasing the lien.

***Doctrine of Laches and Good Faith***

Capital One next contends that even if Appellees established the elements of their statutory claim, genuine issues remained regarding the doctrine of laches and good faith. Irrespective of its title, the concept implies that the landowner has a duty to act reasonably and in good faith. *Union Planters Bank, N.A. v. Hutson*, 210 S.W.3d 163, 167 (Ky. App. 2006). Capital One asserts that Appellees' six month delay in bringing their statutory claim was unreasonable, barring them from recovery. It relies on *Union Planters Bank*, *supra.*

We acknowledge that Capital One's premise finds support in this Court's opinion in *Union Planters Bank*. However, this case is factually distinguishable. In *Union Planters Bank*, the plaintiffs executed a mortgage to secure a loan and paid it in full less than a year later. Union Planters Bank did not release the mortgage. Notice was given, but there was no further communication between the parties until the action was filed approximately eight months later. *Id*. at 165. The Court of Appeals addressed whether the defense of laches/good faith imposed on the plaintiffs a duty to act in good faith, for example, by following up on the notice sent to the lienholder. *Id*. at 167-68. This Court noted, "[Plaintiffs'] rights flowed from a contractual relationship with the Bank. The Courts have not

hesitated to place a duty of good faith on both parties to a contract. 'In every contract, there is an implied covenant of good faith and fair dealing.'" *Id.* at 167. It then noted some of the advantages of implying a duty to act in good faith and remanded the issue of damages.

Here, however, the Appellees did not have a contractual relationship with Capital One from which a duty of good faith may be implied. When the Appellees purchased from Freddie the parcel of land encumbered by Capital One's judgment lien, they did not step into Freddie's shoes vis-à-vis his account indebtedness with Capital One. In the absence of such a contractual relationship between the Appellees and Capital One, the equitable doctrine of laches and good faith as applied in *Union Planters Bank* is not applicable.

In addition, we note the text of KRS 382.365 does not impose on a party enforcing their statutory rights an independent duty to act in good faith. Instead, so long as they meet the required elements, they may bring an action within the five-year statute of limitations. KRS 413.120.

Accordingly, we agree with the circuit court that the doctrine of laches and good faith does not apply to the facts of this case.

### Protective Order

Finally, Capital One argues that the circuit court abused its discretion when it granted the Appellees' motion for a protective order. It contends the order

denied it the opportunity to develop facts essential to oppose summary judgment. We disagree.

To be sure, "[summary judgment] is proper only after the party opposing the motion has been given ample opportunity to complete discovery and then fails to offer controverting evidence." *Henninger v. Brewster*, 357 S.W.3d 920, 928 (Ky. App. 2012) (quoting *Suter v. Mazyck*, 226 S.W.3d 837, 841 (Ky. App. 2007)). "It is not necessary to show that the respondent has actually completed discovery, but only that respondent has had an opportunity to do so." *Id*. (internal quotations omitted). Issuance of a "protective order is within the full discretion and authority of the trial court and is appropriate only to prevent a party from 'annoyance, embarrassment, oppression, or undue expense or burden.'" *Richmond Health Facilities-Madison, LP v. Clouse*, 473 S.W.3d 79, 83 (Ky. 2015) (quoting *Ewing v, May*, 705 S.W.2d 910, 913 (Ky. 1986)); CR 26.03(1).

Here, Capital One contends that Freddie had relevant information regarding its defense, including communications about the refund and submission of payment to satisfy the lien. Although we agree with Capital One that some of this information is relevant, we note, as did the circuit court, that the relevant information had been stipulated on the record. Capital One does not describe any additional material fact, genuinely disputed, that could be gleaned from the

deposition. Accordingly, all material facts pertaining to the refund and resubmission of payment were already established.

In addition, any communications between Freddie and Capital One after the refund are irrelevant. As noted above, the three elements at issue are: (1) satisfaction; (2) notice; and (3) good cause. Because satisfaction is defined by KRS 382.365(7), the lien was satisfied upon receipt of the payoff check. Any communications after that point are not relevant to satisfaction. Likewise, Freddie would have no knowledge regarding notice. And lastly, Capital One's attempt to collect on both of Freddie's debts undermined its good cause defense. Any subsequent communications with Freddie regarding the refund have no bearing on this case.

Accordingly, we find no error in the circuit court's entry of the protective order.

## CONCLUSION

Based on the foregoing, we affirm the Trigg Circuit Court's entry of summary judgment in favor of the Appellees.

ALL CONCUR.

BRIEFS FOR APPELLANT:

H.B. Quinn
Cadiz, Kentucky

Brian C. Neal
Nashville, Tennessee

Rik S. Tozzi
Birmingham, Alabama

BRIEF FOR APPELLEE:

Daniel N. Thomas
Hopkinsville, Kentucky