RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0184p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

RODERICK ROBERTSON; LETITIA ROBERTSON,

        *Plaintiffs-Appellants,*

    *v.*

U.S. BANK, N.A., as Trustee for Residential Assets Securities Corporation, Home Equity Mortgage Asset-Backed Pass Through Certificates, Series 2006-EMX3; WILSON & ASSOCIATES, PLLC; RESIDENTIAL ASSETS SECURITIES CORPORATION, HOME EQUITY MORTGAGE ASSET-BACKED PASS THROUGH CERTIFICATES SERIES 2006-EMX3 TRUST,

        *Defendants-Appellees.*

Nos. 15-6286/16-5116

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:14-cv-02677—Samuel H. Mays, District Judge.

Decided and Filed: August 3, 2016

Before: SUTTON, GRIFFIN, and DONALD, Circuit Judges.

---

### COUNSEL

**ON BRIEF:** Drayton D. Berkley, Memphis, Tennessee, for Appellants. Bradley E. Trammell, Kavita Goswamy Shelat, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Memphis, Tennessee for Appellee U.S. Bank. Jerry Morgan, WILSON & ASSOCIATES, PLLC, Brentwood, Tennessee, for Appellee Wilson & Associates.

---

**OPINION**

---

SUTTON, Circuit Judge.  This case arises from a depressingly familiar scenario:  a loan secured before the 2008 recession and defaulted after it.  Facing foreclosure, Roderick and Letitia Robertson sued U.S. Bank, seeking to rescind the loan based on the bank's violation of the Truth in Lending Act and alleging that the bank at any rate had no basis for foreclosing on their home in the first place.  The district court granted summary judgment for U.S. Bank on all claims.  We affirm on all claims.

I.

On December 23, 2005, the Robertsons borrowed $192,000 from Mortgage Lenders Network.  The loan was secured by a mortgage on their home in Memphis, Tennessee.  The note included an endorsement from Mortgage Lenders Network to EMAX Financial Group.  Through a January 26 allonge, an additional piece of paper attached to a promissory note to provide room for other endorsements, EMAX endorsed the note to Residential Funding Corporation, with a second endorsement from Residential Funding Corporation to U.S. Bank.  The Robertsons' note was bundled into a mortgage-backed trust with U.S. Bank designated as supervisor of the trust.  The deed of trust listed MERS (Mortgage Electronic Registration Systems) as the beneficiary.  MERS holds mortgage instruments on behalf of its members, including most of the large financial institutions.  *See Christian Cty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 452 (6th Cir. 2013).  MERS tracks the notes and continues to act as an agent for their owners as the notes are transferred on the secondary market.  *Id.*  The deed listed "Robert M. Wilson" of Wilson & Associates as trustee, making the firm responsible for conducting any foreclosure sale.  R. 24-1 at 30.  The Robertsons stopped making payments on the loan in August 2011.  MERS learned of the default and assigned the deed to U.S. Bank.  On July 2, 2014, Wilson & Associates sent the Robertsons a Notice of Trustee's Sale scheduled for August 8.  The Robertsons responded with a "notice of rescission" to U.S. Bank and Wilson & Associates on July 9, alleging that U.S. Bank had violated the Truth in Lending Act and that it lacked standing to foreclose.  R. 24-1 at 52.

The day before the scheduled foreclosure sale, the Robertsons sued U.S. Bank and Wilson & Associates in state court, repeating the allegations in the notice of rescission. U.S. Bank removed the case to federal court, where the Robertsons agreed to dismiss Wilson & Associates from the lawsuit. The district court granted U.S. Bank's motion for summary judgment.

II.

On appeal, the Robertsons target four errors: (1) Wilson & Associates waived its right to remove the case; (2) U.S. Bank failed to comply with a notice requirement of the Truth in Lending Act, giving the Robertsons the right to rescind the loan; (3) U.S. Bank lacked standing to enforce the note because it never showed it had a stake in the loan; and (4) U.S. Bank forfeited its right to foreclose when it failed to raise the claim in its answer to the Robertsons' complaint.

*Removal*. The Robertsons submit that Wilson & Associates waived its right to remove when it made the following filings in state court: an objection to the Robertsons' motion for a temporary injunction, an objection to their motion to deem portions of the complaint admitted, and an answer to the complaint. Most importantly, they claim, the waiver binds U.S. Bank.

But Wilson & Associates never waived its right to remove the case, and even if it had the waiver would not bind a later-served defendant such as U.S. Bank. Waiver of the right to remove must be "clear and unequivocal." *Regis Assocs. v. Rank Hotels (Mgmt.) Ltd.*, 894 F.2d 193, 195 (6th Cir. 1990). Any such waiver usually must be explicit, but a defendant may constructively waive the right to remove by taking substantial action in state court that manifests a willingness to litigate on the merits. Wright & Miller, 14B Federal Practice & Procedure § 3721 (4th ed.); *cf. Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717–19 (6th Cir. 2012). Affirmative actions, like filing a cross-claim or permissive counterclaim in state court, are the kinds of steps that may amount to waivers. Wright & Miller § 3721 n.144 (collecting cases).

But nothing of the sort happened here. Wilson & Associates never explicitly waived its right to remove the case, and its actions did not constructively do so. Far from it. The firm said it had no intention of participating in the resolution of this matter in *any* court. In its Verified

Denial and Answer, Wilson & Associates argued that, as trustee for the Robertsons' deed of trust, it was not a necessary party to the action and should be dismissed under Tennessee Code § 35-5-116. The pleading was effective, as the Robertsons later stipulated to the dismissal of Wilson & Associates. Appearing before a tribunal only to excuse oneself from future proceedings does not count as an intentional relinquishment of rights. Nor does filing an answer waive the right to remove, *Atlanta, Knoxville & N. Ry. Co. v. S. Ry. Co.*, 131 F. 657, 661 (6th Cir. 1904), as the Federal Rules contemplate the filing of an answer prior to the time for filing a removal motion, Fed. R. Civ. P. 81(c)(2).

Wilson & Associates' other pleadings also do not betray a commitment to litigate the case in state court. The point of a temporary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held," and any findings of fact and conclusions of law at this stage do not bind the court when it reaches the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Because a motion for a temporary injunction is necessarily resolved *before* a court reaches the merits of a case, Wilson & Associates did not show any intent to litigate on the merits by opposing the Robertsons' motion. *See Atlanta, Knoxville & N. Ry. Co.*, 131 F. at 661–63; *Rose v. Giamatti*, 721 F. Supp. 906, 923 (S.D. Ohio 1989). In responding to the Robertsons' motion to deem portions of the complaint admitted, Wilson & Associates pointed out only that it still had time to file an answer and that no facts should be presumed admitted before it did so. None of these defensive actions by Wilson & Associates constitute a "clear and unequivocal" waiver of the right to remove.

The Robertsons face another hurdle in making this argument. Even if Wilson & Associates had waived its right to remove, the waiver would not bind U.S. Bank. In cases with multiple defendants, the "rule of unanimity" requires that each defendant consent to removal. 28 U.S.C. § 1446(b)(2)(A); *see Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516 (6th Cir. 2003). "Each defendant," the removal statute says, "shall have 30 days after receipt by or service on that defendant of the initial pleading . . . to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B). "If . . . a later-served defendant files a notice of removal," it adds, "any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." *Id.* § 1446(b)(2)(C). Taken together, the two

provisions show that an earlier-served defendant's conduct does not extinguish a later-served defendant's right to remove the case. As long as the defendant who waived the right to remove consents to removal when the later-served defendant seeks it, the prior waiver has no effect.

The Robertsons' argument might have gotten traction in some courts *before* Congress amended the removal statute in 2011, adding subsection (C) and making clear in subsection (B) that *each* defendant has thirty days to remove. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112-63, 125 Stat. 758, 760. Before the amendments, some courts adhered to the "first-served defendant" rule and closed the removal window thirty days after the first defendant was served, regardless of when later defendants were served. *See, e.g.*, *Brown v. Demco, Inc.*, 792 F.2d 478, 481–82 (5th Cir. 1986). It followed under that rule that an earlier-served defendant's waiver could bind a later-served defendant, just as an earlier-served defendant's failure to seek removal could bind other defendants. *See, e.g.*, *Air Starter Components, Inc. v. Molina*, 442 F. Supp. 2d 374, 379 (S.D. Tex. 2006). But this court has followed the "last-served defendant" rule for some time. Since *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 & n.3 (6th Cir. 1999), we have recognized that permitting an earlier-served defendant's conduct to defeat a later-served defendant's right to seek removal would "nullify" the last-served defendant rule, and thus have stood by the position that one defendant's failed attempt to remove could not inhibit a later-served defendant's opportunity to remove. Now that Congress has codified this position, there is no room for doubt.

*Truth in Lending Act.* The Robertsons claim they may rescind the loan due to U.S. Bank's failure to notify them of the assignment of the deed of trust. *See* 15 U.S.C. § 1641(g). Whether the right of rescission under § 1635 applies to violations of § 1641(g) appears to be a new question in the courts of appeals.

Congress added subsection (g) to § 1641 in the Helping Families Save their Homes Act of 2009. Pub. L. 111-22, 123 Stat. 1658. "[N]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned," the provision says, "the new owner or assignee of the debt shall notify the borrower in writing of such transfer." In the same Act, Congress authorized actual and statutory damages for violations of § 1641(g). 15 U.S.C. § 1640(a).

First off, § 1641(g) requires notice of assignment only of a "mortgage loan" or "debt," which it defines as "any consumer credit transaction that is secured by the principal dwelling of a consumer." *Id.* § 1641(g)(2). Regulation Z, which implements the Truth in Lending Act, applies § 1641(g) only to entities that "acquir[e] legal title to the debt obligation." 12 C.F.R. § 1026.39(a)(1). The notice requirement applies only to an assignment of the underlying debt, not to the instrument—such as the Robertsons' deed of trust—that secures the transaction. The requirement would apply to an assignment of the Robertson's note, but U.S. Bank was assigned the Robertsons' promissory note in early 2006, more than three years before § 1641(g) entered the U.S. Code. At the time, U.S. Bank had no obligation to notify the Robertsons that the note was assigned to it.

The doctrine of equitable assignment supports this reading. Under the doctrine, "the debt is the principal thing and the mortgage an accessory," and therefore "[t]he transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter." *Carpenter v. Longan*, 83 U.S. 271, 275 (1872); *see also* Restatement (Third) of Property: Mortgages § 5.4(a) (2016); Tenn. Code Ann. § 47-9-308(e). U.S. Bank in other words became the legal holder of the deed of trust as soon as it was assigned the note in 2006, and nothing of consequence changed when MERS assigned the deed of trust to U.S. Bank in 2012.

But even if we assume that U.S. Bank violated § 1641(g), the Robertsons would not be entitled to rescind their loan. A violation of § 1641(g) would have entitled the Robertsons to a damages award of between $400 and $4,000 (or more if they could show actual damage from the failure to notify) if they had brought an action within one year of the violation, and they would still be able to assert a recoupment defense in a collection action by U.S. Bank. 15 U.S.C. § 1640(a)(2)(A)(iv), (e). But the Robertsons do not seek damages in connection with this claim. They instead argue that U.S. Bank's alleged violation of § 1641(g) gives them the right to rescind the loan agreement under § 1635.

Section 1635(a) provides that "*in the case of any consumer credit transaction . . . [involving a mortgage] the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing*

the *material disclosures* required under this subchapter, whichever is later." (emphasis added). If the bank never makes the material disclosures, the borrower has a continuing right to rescind for up to three years after the transaction. *Id.* § 1635(f).

The two italicized portions of § 1635(a) confirm that the failure to notify a borrower of an assignment do not give rise to a right to rescind the entire loan agreement. The provision refers only to disclosures that take place *in a consumer credit transaction*. Section 1602(i) states that a consumer credit transaction is "one in which the party to whom credit is . . . extended is a natural person, and the . . . subject of the transaction [is] primarily for personal . . . purposes." The signing of the initial loan agreement, which took place in December 2005, counts as such a transaction. But the assignment of the deed of trust from MERS to U.S. Bank in 2012 (or, for that matter, the assignment of the note) does not. Neither party was a consumer; neither was extended credit. The Robertsons were not a party to that transaction, and it did not affect the terms of their loan.

The statutory definition of "material disclosures" shows that only omitted disclosures relevant to the terms of a loan give rise to a right of rescission. Section 1602(v) explains that:

> The term "material disclosures" means the disclosure . . . of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) of this title.

Section 1639(a) requires notifications to the effect that the borrower is under no obligation to complete the agreement just because she filled out an application and that foreclosure is a possibility. *See also* 12 C.F.R. § 226.23(a) n.48 (an essentially identical list of material disclosures); *Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 882 (6th Cir. 2006). The phrasing of § 1602(v) indicates that the list is exhaustive. Even if that were not the case, all of the listed disclosures relate to the terms of the loan: information without which a borrower could not make an informed decision. These disclosures form an "associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (quotation omitted). It makes sense

that disclosure of an assignment—which cannot possibly influence the borrower's decision because it always happens after the loan agreement is signed—is not included. We will not read it in. *Accord Nickell v. Bank of Am., N.A.*, No. 11-2006-STA-dkv, 2012 WL 394467, at *12 (W.D. Tenn. Feb. 6, 2012).

In the last analysis, the Robertsons likely did not even have a right to be notified of the assignment of the deed of trust to U.S. Bank, and even if they did the remedy they seek is not authorized by the statute. The district court rightly granted summary judgment to U.S. Bank on this claim.

*Standing to Enforce the Note.* The Robertsons claim that U.S. Bank lacked standing to enforce the note because no admissible evidence shows it had a stake in the loan. The loan documentation submitted by U.S. Bank, they submit, amounts to inadmissible hearsay because the accompanying affidavit does not establish that the documents are subject to the business records hearsay exception.

The Robertsons' hearsay argument fails for a basic reason: The relevant documents are not hearsay. It is true that out-of-court statements offered "to prove the truth of the matter asserted" are hearsay. Fed. R. Evid. 801(c)(2). But under the "verbal acts" doctrine, writings and statements, such as contracts, that "affect[] the legal rights of the parties" are not. Fed. R. Evid. 801(c), Advisory Comm. Note; *see Preferred Props., Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 798 n.5 (6th Cir. 2002); Wright & Miller § 7005. The note and allonge were introduced to establish U.S. Bank's right to foreclose on the Robertsons' property. The significance of these contracts "lies solely in the fact that [they were] made." Fed. R. Evid. 801(c), Advisory Comm. Note. Because "no issue is raised as to the truth of anything asserted" in the note and allonge, they cannot be hearsay. *Id.* Nor is authentication an issue, as the documents were publicly recorded. *See* Fed. R. Evid. 902(1).

Even if we agreed with appellants that the supporting affidavit from a Wells Fargo employee does not satisfy the requirements of Rule 803(6), it would not make a difference. The Wells Fargo business records attached to the affidavit, which establish the Robertsons' default, are not needed to show that U.S. Bank is the valid possessor of the note. The Robertsons do not

claim to have met their payment obligations under the note; they contest only U.S. Bank's standing to enforce it.  The endorsements on the note and allonge settle that question.

*Forfeiture of Right to Foreclose.*  The Robertsons argue that U.S. Bank forfeited its right to foreclose when it failed to bring a compulsory breach of contract counterclaim in response to the Robertsons' complaint.  The Robertsons raised this argument for the first time after they lost at summary judgment, making the contention only in response to U.S. Bank's motion to require a supersedeas bond for appeal.  The district court never addressed the argument in its order denying the request for a supersedeas bond, likely for the understandable reason that it had nothing to do with whether a bond should be required.  The Robertsons thus forfeited this forfeiture argument.  *Cf. United States v. Turner*, 602 F.3d 778, 783 (6th Cir. 2010).

The argument fails in any event.  U.S. Bank did not forfeit its right to foreclose by failing to bring a counterclaim because foreclosure is not a judicial remedy in Tennessee and thus there was no reason to raise such a counterclaim.  In Tennessee, a trustee may conduct a foreclosure sale without making any filing in court.  Tenn. Code Ann. § 47-9-609(b)(2); *see, e.g., id.* § 35-5-101.  Because U.S. Bank did not need to ask the courts to foreclose on the Robertsons' property, the counterclaim argument goes nowhere.

For these reasons, we affirm.